**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

v.                                                    Case No. 3:07-cr-132-J-33HTS

SAMMIE LEE WILSON, III
_____

**REPORT AND RECOMMENDATION**[1]

**I.  Status**

This cause is before the Court on the Motion to Suppress Evidence and Statements (Doc. #51; Motion), filed on August 8, 2007.  The government filed opposition in response to the Motion on August 16, 2007.  *See* United States' Response in Opposition to Defendant's Motion to Suppress Evidence and Statements (Doc. #55; Response).  An evidentiary hearing was held before the undersigned on August 21, 2007.

---

[1]  Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

## II. Testimony

### A. Officer John Byrd

John Byrd has been employed by the Florida Highway Patrol for over six years. He has worked in the contraband interdiction program for approximately the last two years. His duties include conducting traffic stops with an emphasis on narcotics interdiction. Mr. Byrd has received training in the operation of radar equipment and visual estimation of vehicle speed.

On April 18, 2007, Trooper Byrd was in his marked police car positioned along Interstate 95, facing south and using radar to clock the speeds of northbound vehicles. The radar equipment had been calibrated recently and was in proper working order. Sometime during the afternoon, Officer Byrd observed a gray Chrysler 300 that he later determined was occupied by Darryl Summerall and rented by Defendant, who was driving. He estimated the vehicle's speed at 75 to 77 miles per hour and radar confirmed a speed of 75 miles per hour, whereas the lawful speed limit for that stretch of highway was 65 miles per hour. Thus, the trooper followed the car, activated his lights, and pulled it over onto the right shoulder of the roadway. In doing so, he also called Trooper Cimino, who had been parked next to him at the start of the incident, and asked for assistance.

Once the Chrysler was stopped, Officer Byrd approached on the passenger side. He noticed there were two occupants including the

driver, and neither was wearing a seat belt. Multiple cell phones were visible in the center console and fast food bags were on the floor. The vehicle was still running. Officer Byrd advised the occupants as to the reason for the stop (speeding) and asked why they were not using their seat belts. "They didn't really say [a] whole lot other than . . . Mr. Wilson was asking for a warning. And Mr. Summerall . . . was just nervous" and would not make eye contact. Transcript of Suppression Hearing (Tr.) at 25. There was no indication, however, "that there was a problem with the driver, Mr. Wilson[.]" *Id.* at 50. The trooper requested driver's licenses and vehicle information, which were then provided. Mr. Wilson was asked to shut the engine off, as conversation was difficult due to noise, and to step out of the car. Defendant complied, leaving the keys in the ignition. Only about a minute had passed at that point since the initiation of the stop.

Officer Byrd advised Mr. Summerall he would be with him shortly, leaving the man in the vehicle while he and Mr. Wilson proceeded to the front of the patrol car, which was parked very close behind the Chrysler. Defendant again asked if he could be issued a warning. In response to an inquiry as to where he was coming from, Mr. Wilson indicated he had been to Daytona, had received a ticket on the way there earlier in the day, and could not afford another. He said the ticket was in the vehicle and he would retrieve it for the officer. Trooper Byrd "wanted to . . .

- 3 -

see if [he] knew the trooper who wrote him the ticket." *Id.* at 52. He told Defendant to stay by the squad car and he would get the ticket for him, intending to ask the passenger to hand it over. However, when the officer turned to do so he saw that "Mr. Summerall had jumped over to the . . . driver seat." *Id.* at 29. Trooper Cimino had arrived by this time, parking in front of the 300, and he likewise observed the seating switch.

Mr. Byrd instructed Defendant to lie on the ground--for safety reasons--and commanded Mr. Summerall to remove himself from the car and shut it off. The officer came up to the passenger side of the Chrysler and witnessed Mr. Summerall attempting to put the car in drive. Given that the keys were still in the ignition, it seemed the ability to flee was present.[2] Meanwhile, Trooper Cimino positioned himself on the driver's side and, as his colleague had done, instructed the occupant "to get out of the car and turn the car off." *Id.* at 30. The police had their weapons drawn, but they had to repeat their instructions several times. Finally, Mr. Summerall gave up and was arrested for attempting to flee. He was handcuffed and placed into the back of a patrol car.

Thereafter, Mr. Wilson was also put into handcuffs and given a seat in the back of Officer Byrd's vehicle. He was not being arrested at that moment, only detained due to "the totality of the

---

[2] Officer Byrd "thought he had cranked [the car] up, but" afterward it was learned the engine "apparently . . . was not on." *Id.* at 31.

whole situation." *Id.* at 32. "Just a few minutes" had elapsed between the time of the stop and the passenger's actions that led to his arrest. *Id.* at 33. Mr. Summerall's license was run through the computer, a procedure that takes mere seconds, and his status as a habitual traffic offender was revealed.

A search of the vehicle incident to Mr. Summerall's arrest then yielded a light brown plastic grocery bag containing "[s]everal white chunks of what appeared to be cocaine" partially tucked under the front passenger seat. *Id.* at 34. Officer Byrd recognized the substance as such based on his training and experience. Additionally, the traffic citation mentioned by Mr. Wilson was found, but it had been "issued down in Palm Beach[, which is] a lot further south than Daytona." *Id.* at 34-35.

After the drugs were discovered, both of the Chrysler's former occupants were informed "that they were under arrest for possession of the cocaine." *Id.* at 35. They were advised of their rights from a card read to them by Officer Byrd. Hence, they were told:

> [Y]ou have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning if you wish. If you cannot afford to hire a lawyer, one will be appointed for you before -- before any questions if you wish. If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time until you talk to a lawyer.

*Id.* at 36. Defendant indicated he understood his rights. No weapons were drawn during the advisement of rights and Mr. Wilson

was not coerced or intimidated in any way into stating he understood his rights.  Fifteen to twenty minutes passed from the moment of the stop to Defendant's arrest.

**B.  Officer Jay Taylor, Jr.**

Detective Taylor began working for the Jacksonville Sheriff's Office on a full-time basis in 1999.  He has been assigned to the narcotics division for over a year.

On April 18, 2007, Officer Taylor learned of the arrest of Defendant and Darryl Summerall through Detective Keith Crean.  He was not present at the scene of the traffic stop; rather, his role involved assisting with the interviewing process.  Officer Taylor, with Detective Crean present, advised Defendant of his constitutional rights from a form.[3]  No threats, intimidation, or other forms of coercion were used to cause Mr. Wilson to sign the form.  Further he indicated verbally that he understood each of the

---

[3]  The form was received into evidence, without objection, as Government's Exhibit #5, and states:

You have the following rights under the United States Constitution:

>   You do not have to make a statement or say anything.
> 
>   Anything you say can be used against you in court.
> 
>   You have the right to talk to a lawyer for advice before you
>   make a statement or before any questions are asked of you, and
>   to have the lawyer with you during any questioning.
> 
>   If you cannot afford to hire a lawyer, one will be appointed
>   for you before any questioning if you wish.
> 
>   If you do answer questions, you have the right to stop
>   answering questions at any time and consult with a lawyer.

The form bears Defendant's signature and each sentence describing his rights is initialed "SW."

rights explained to him.  Defendant, who seemed relaxed, coherent, and articulate, decided to waive his rights and make a statement.

### III.  Summary of Argument

Defendant asks the Court "to suppress any and all statements made to law enforcement officers, along with all evidence and all fruits of the vehicle search at issue, as products of an unlawful search and seizure[.]"  Motion at 1.  He asserts his detention, his arrest, and the search of the vehicle he was driving were all illegitimate.  *See id.* at 2.  At the hearing, the government expressed agreement that Defendant has standing to challenge the search of the car in that he possessed a reasonable expectation of privacy in regard thereto.  *See* Tr. at 5.

### IV.  Analysis

**A.  Traffic Stop**

Mr. Wilson does not specifically challenge the propriety of the initial stop.  Nonetheless, the Court will briefly review its legal basis.

"[L]aw enforcement may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles."  *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998) (internal quotation marks omitted); *see also United States v. Griffin*, 109 F.3d 706, 707 (11th Cir. 1997) (per curiam); *United States v. Jennings*, No. 6:06-

cr-120-Orl-31DAB, 2006 WL 2947846, at *2 (M.D. Fla. Oct. 16, 2006). A stop is reasonable under the Fourth Amendment when an officer has probable cause to believe a traffic violation has occurred, even if it is made as a pretext to search for drugs. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). The Eleventh Circuit has explained:

> [T]he constitutional reasonableness of a traffic stop must be determined irrespective of intent, whether of the particular officers involved or of the theoretical reasonable officer. The [*Whren*] decision conclusively refutes the notion that ulterior motives may invalidate police conduct that is justified on the basis of probable cause to believe that a violation of law has occurred.

*United States v. Holloman*, 113 F.3d 192, 194 (11th Cir. 1997) (per curiam) (internal citation and quotation marks omitted); *see also Draper v. Reynolds*, 369 F.3d 1270, 1275 (11th Cir. 2004) (discussing *Whren* and *Holloman*).

The unrefuted testimony demonstrates Defendant was stopped for exceeding the speed limit. Consequently, the stop was reasonable even if the officer subjectively hoped he might ultimately uncover evidence of narcotics activity.

**B.  Scope and Duration of Detention Prior to Arrest**

Ordinarily, "an officer's actions during a traffic stop must be 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) (emphasis omitted)

(quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)); *see also United States v. Ramirez*, 476 F.3d 1231, 1236 (11th Cir. 2007).  The duration of a traffic stop may not be "'any longer than necessary to process the traffic violation' unless there is articulable suspicion of other illegal activity."  *Purcell*, 236 F.3d at 1277 (quoting *Holloman*, 113 F.3d at 196); *see also Ramirez*, 476 F.3d at 1237; *United States v. Ozbirn*, 189 F.3d 1194, 1200 (10th Cir. 1999) (detection of marijuana odor prior to completion of initial investigation justified further detention and questioning of occupant).

"[P]olice officers conducting a traffic stop may 'prolong the detention to investigate the driver's license and the vehicle registration, and may do so by requesting a computer check.'" *United States v. Boyce*, 351 F.3d 1102, 1106 (11th Cir. 2003) (quoting *Purcell*, 236 F.3d at 1278).  Additionally, "out of interest for the officer's safety, [it has been] found that officers may permissibly prolong a detention while waiting for the results of a criminal history check that is part of the officer's routine traffic investigation[,]" *id.*, as "long as the computer check does not prolong the traffic stop beyond a reasonable amount of time under the circumstances[.]"  *Purcell*, 236 F.3d at 1279.

Here, soon after stopping the car, Officer Byrd noticed one of its occupants appeared nervous and would not make eye contact. Arguably, he had cause at that point to engage in more extensive

questioning than would otherwise be the case. In any event, the officer's asking about where Mr. Wilson was traveling to and from does not offend the Fourth Amendment. In sum, the detention up to the point of Mr. Summerall's alleged attempt to flee was valid. Assuming for the moment the passenger's arrest and the vehicle search were proper, Defendant's detention during that period would also be appropriate. His speeding infraction had not yet been fully dealt with, and as a practical matter the police needed to address the new development and secure their own safety before turning their attention back to Mr. Wilson.

### C. Arrest of the Passenger

Where there is probable cause to believe an individual has committed a felony, a police officer is justified in making a warrantless arrest. *See United States v. Santa,* 236 F.3d 662, 676 n.20 (11th Cir. 2000) (citing *United States v. Watson*, 423 U.S. 411, 423-24 (1976)). In addition, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Probable cause exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an

offense." *United States v. Lyons,* 403 F.3d 1248, 1253 (11th Cir. 2005) (internal quotation marks omitted); *see also Jordan v. Mosley,* 487 F.3d 1350, 1355 (11th Cir. 2007); *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004); *United States v. Gordon*, 231 F.3d 750, 758 (11th Cir. 2000); *United States v. Allison,* 953 F.2d 1346, 1349-50 (11th Cir. 1992).

Even assuming Mr. Wilson has standing to challenge Mr. Summerall's arrest, either directly or indirectly, he lacks sufficient grounds on which to prevail. There can be little doubt that Mr. Summerall's behavior, as described in the unrefuted testimony of Officer Byrd, gave the police probable cause to arrest him. Despite his detainment as a passenger in a vehicle subjected to a traffic stop, *see Brendlin v. California*, --- U.S. ---, ---, 127 S. Ct. 2400, 2406-07 (2007) ("[A]ny reasonable passenger would have understood . . . no one in the car was free to depart without police permission."), the man had moved over to the driver's seat and appeared to be trying to put the car in gear. He finally desisted only after being commanded repeatedly by the officers, whose weapons were drawn, to exit the vehicle. The police made a reasonable inference that Mr. Summerall was attempting to leave the scene with the purpose of eluding them. They had probable cause to arrest him, if not for attempting to elude a law enforcement officer, *see* Fla. Stat. § 316.1935, then for initially resisting

their commands to cease his efforts to escape from lawful detention.  *See* Fla. Stat. § 843.02.

**D.  Validity of Search Incident to Passenger's Arrest**

The Supreme Court has "held that when a police officer has made a lawful custodial arrest of an occupant of an automobile, the Fourth Amendment allows the officer to search the passenger compartment of that vehicle as a contemporaneous incident of arrest."  *Thornton v. United States*, 541 U.S. 615, 617 (2004) (discussing *New York v. Belton*, 453 U.S. 454 (1981)); *see also United States v. Lengen*, No. 05-4321, 2007 WL 1748159, at *3 (6th Cir. June 18, 2007) (per curiam) ("[T]he Supreme Court has now expanded that concept to allow a search incident to arrest when the arrestee was not only handcuffed but also placed in the back seat of a patrol car before the police began a search of a vehicle from which the arrestee had recently exited.").  Accordingly, the search herein is found to have been constitutional.

It is noted that, even had the initial stop or detention taken place unlawfully, it appears the subsequent arrest and search would still have been permissible.  *See United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir. 1995) (citing, *inter alia*, *United States v. Bailey*, 691 F.2d 1009, 1019 (11th Cir. 1982), which, at 1016-17, declared "that notwithstanding a strong causal connection in fact between lawless police conduct and a defendant's response, if the defendant's response is itself a new, distinct crime, then the

police constitutionally may arrest the defendant for that crime[,]" and, at 1018, confirmed that a search incident to such an arrest may legally proceed); *United States v. Thurmond*, No. CR05-2023, 2005 WL 2216896, at *3 (N.D. Iowa Sept. 12, 2005) (quoting *Dawdy*, 46 F.3d at 1431); *cf. United States v. LeCroy,* 441 F.3d 914, 925 (11th Cir. 2006) (arrest for operation of unsafe vehicle led to constitutionally permissible "search incident to the arrest, including a search of the passenger compartment of the car") (citing *Belton*, 453 U.S. at 460).

### E. Probable Cause to Arrest Defendant

The general standard for making a warrantless arrest was outlined in part III.C. of this Report and Recommendation. Nevertheless, while the Court had little difficulty concluding the arrest of Mr. Summerall was supported by probable cause, a closer analysis of authority is necessary to determine the propriety of Defendant's arrest. The government asserts, without citation, that "[o]nce the cocaine was found, probable cause existed for the arrest of Wilson." Response at 4. The matter is not so simple.

In *Maryland v. Pringle*, the Supreme Court determined the warrantless arrest of a vehicle's occupant was justified based on the discovery of "$763 of rolled-up cash in the glove compartment[,]" 540 U.S. 366, 371-72 (2003), and "[f]ive plastic glassine baggies of cocaine . . . behind the back-seat armrest and accessible to all three men" occupying the car, and the fact that,

"[u]pon questioning, the three men failed to offer any information with respect to the ownership of the cocaine or the money." *Id.* at 372.  The Court emphasized "[t]he quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person[.]" *Id.* at 373.  Clearly, *Pringle* "does not announce a broad rule permitting the arrest of all persons within a car any time a valid search of the car reveals drugs or other contraband." *Perry v. State*, 916 So. 2d 835, 836 (Fla. Dist. Ct. App. 2005); *cf. United States v. Williams*, No. CRIM. RDB-05-0240, 2005 WL 1902490, at *3 n.4 (D. Md. Aug. 9, 2005) (questioning "the government's expansive interpretation of" *Pringle*, which would condone "the immediate arrest of all occupants" upon discovery of cocaine in a vehicle). Thus, the totality of the circumstances must still be explored.

Compared to *Pringle*, the case at bar involves facts that are in some ways less supportive of probable cause to arrest all occupants.  For instance, the quantity of suspected cocaine found is unspecified.  In his testimony, Officer Byrd alleges he discovered "[s]everal white chunks[,]" but he never indicates the size or weight of the material.  Tr. at 34.[4]  And unlike the situation in *Pringle*, in which both drugs and a quantity of rolled-up cash were uncovered, here the police found only what appeared to

---

[4] Although the Indictment (Doc. #1) charges Defendant with conspiring to distribute a substantial amount of cocaine, the Court would certainly not be justified in drawing any conclusions therefrom as to the amount of drugs uncovered during the search at issue.

be drugs.  Thus, arguably there would be less basis to suppose the police had developed reason to believe there was a "likelihood of drug dealing[.]"  *Pringle*, 540 U.S. at 373.

The substance was in a brown plastic bag partly tucked under Mr. Summerall's seat, and none of Defendant's personal effects were claimed to have been found in the bag.  Further, Officer Byrd averred Mr. Summerall appeared nervous, not Defendant.  And it was Mr. Summerall, not Mr. Wilson, who attempted to flee.  Mr. Wilson, in contrast, complied with all requests.  He volunteered that he had received a ticket earlier in the day, and this much of his statement was later verified to have been correct.

Given that the police appear to have had stronger reasons for focusing on Mr. Summerall than on Mr. Wilson, it is perhaps surprising they did not investigate further prior to arresting Defendant.  In *Pringle*, of course, one of the three facts identified by the Court as combining to establish probable cause is "questioning[ of the vehicle's occupants, who] failed to offer any information with respect to the ownership of the cocaine[.]"  *Id.* at 372; *see also Perry*, 916 So. 2d at 840-41 (discussing importance of this factor to the *Pringle* Court).  Although the Court does not rely thereon, it is interesting to note Defendant attached to the Motion a written statement from Mr. Summerall taking responsibility for the drugs and declaring Mr. Wilson "didn't have anything[] to do with" them, *see* untitled letter, attached to the Motion (also

- 15 -

stating "I tried to claim the drugs that ni[ght] to Det. Keith [Crean]"), which suggests Mr. Summerall might have been willing to make such an admission at the scene, prior to Defendant's arrest, if questioned.[5]

On the other hand, there are substantial facts to support a finding of probable cause for arresting Mr. Wilson.  He supplied incorrect or misleading information concerning the location of his prior speeding ticket.  Multiple cellular telephones were observed in the vehicle's center console.  *Cf. United States v. Greene*, 188 F. App'x 98, 100 (3d Cir. 2006) (possession of "several cellular telephones in" car may be indicative of drug distribution); *United States v. Tillman*, 25 F.3d 1052, No. 93-3620, 1994 WL 198165, at *2 (6th Cir. May 18, 1994) (Table) (per curiam).  The bag containing what appeared to be cocaine was in the front part of the passenger compartment and was likely accessible by both occupants.  Although on the passenger's side when found, it could easily have been placed there in the moments before the stop.  And it should be kept in mind the bag was loose in the vehicle and not on the person of Mr. Summerall.

Weighing in most heavily amongst the relevant factors, however, is Defendant's role as the driver of the Chrysler.  Some opinions seem to imply there is always probable cause to arrest the

---

[5] The Court does not mean to say the police would have been obligated to accept as truthful Mr. Summerall's mea culpa, only that it too would have been a factor to consider in the totality of the circumstances.

driver of a vehicle in which drugs are found. *See, e.g., United States v. Davis*, 70 F.3d 113, No. 93-5753, 1995 WL 678417, at *1 (4th Cir. Nov. 15, 1995) (Table) (per curiam); *United States v. Maling*, 746 F. Supp. 223, 230 n.4 (D. Mass. 1990). Although any such mechanical rule should be rejected in favor of the more nuanced approach embraced by the Supreme Court, *see, e.g., Pringle*, 540 U.S. at 370-71, it cannot be denied the increased control ordinarily exercised by the driver of a vehicle contributes to the circumstances being assessed for probable cause. All the aspects presented, taken together, add up to at least a fair probability that Mr. Wilson had committed a drug-related offense.

In light of the evidence presented and the relevant authority, the Court is of the view that, while the issue is a close one, Defendant's arrest was supported by probable cause. Accordingly, there is no occasion to exclude any evidence or statements flowing therefrom as the fruit of a poisonous tree.

**F.   *Miranda* Warnings**[6]

No explicit challenge has been presented in regard to the sufficiency of the *Miranda* warnings administered to Defendant. He was read his rights at least twice—once by Officer Byrd and again by Detective Taylor. These recitations satisfactorily comport with the requirements of *Miranda*. Finally, there is no indication

---

[6] *See Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966).

Defendant was subjected to coercion, threats, or intimidation in connection with either waiver of his Fifth Amendment rights. It is found he voluntarily, knowingly, and intelligently waived these rights.

### **RECOMMENDATION**

Based on the foregoing, it is recommended the Motion (Doc. #51) be **DENIED.**

**ENTERED** at Jacksonville, Florida, this 5th day of September, 2007.

                                         /s/      Howard T. Snyder
                                         HOWARD T. SNYDER
                                         UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Virginia M. Hernandez Covington
United States District Judge

Counsel of Record
     and pro se parties, if any